DECISION
{¶ 1} Relator, John Stonerock, has filed an original action in mandamus requesting this court to issue a writ of mandamus to order respondent, Industrial Commission of Ohio, to vacate its order that denied his application for permanent total disability compensation, and to issue an order requiring the commission to find that he is entitled to such compensation.
 {¶ 2} This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Section (M), Loc.R. 12 of the Tenth District Court of Appeals, who rendered a decision including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate decided that a writ of mandamus should be denied.
 {¶ 3} Relator has filed objections to the magistrate's decision. In his objections, relator contends the commission failed to give sufficient weight to the report of his treating physician and that it failed to adequately address his age, education and past work experience.
 {¶ 4} The magistrate correctly found that the report of a treating physician is not entitled to greater weight than the report of any other physician in the record. State ex rel. Bell v. Indus. Comm. (1995),72 Ohio St.3d 575. In its order, the staff hearing officer noted that relator's age was 61 and the commission specifically referenced the vocational report of Dr. Ted S. Macey, who stated that his age was not a factor which affected his functional capabilities. As to relator's education, past work experience and job skills, the commission relied in large part on relator's own testimony presented at the hearing to find that his past job experiences were positive factors in terms of his ability to engage in sustained remunerative employment.
 {¶ 5} Therefore, upon a review of the magistrate's decision and an independent review of the record, this court adopts the magistrate's decision as its own. Relator's objections to the magistrate's decision are overruled, and the requested writ of mandamus is denied.
Objections overruled, writ of mandamus denied.
KLATT and McCORMAC, JJ., concur.
McCORMAC, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution
 APPENDIX A IN MANDAMUS {¶ 6} Relator, John Stonerock, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied his application for permanent total disability ("PTD") compensation and ordering the commission to find that he is entitled to PTD compensation.
Findings of Fact:
 {¶ 7} Relator has sustained two work-related injuries. Relator was first injured on April 12, 1991, and his claim has been allowed for: "ruptured right bicep tendon; right carpal tunnel syndrome." Relator suffered a second work-related injury on October 6, 1996, when he was involved in a motor vehicle accident, and his claim has been allowed for: "left clavicle and glenoid fractures." Relator has undergone several surgeries in relation to these injuries.
 {¶ 8} On January 30, 2001, relator filed an application for PTD compensation. Relator's application was supported by the December 13, 2000 report of Dr. David B. Robie who has been relator's treating physician since 1992. Dr. Robie stated as follows in his report:
 {¶ 9} "* * * In my opinion he is indeed permanently and totally disabled. I base this on the presence of chronic pain in the area of his right biceps tendon rupture, the residual neuropathy associated with carpal tunnel syndrome on the right side, chronic pain associated with multiply [sic] operated left ulna fracture, and limited left shoulder function related to his fracture of the left distal clavicle and coracoid, which also has in the past required surgery. I believe he has significant limitation of both arms, which would prevent him from engaging in any sustained ruminative [sic] employment. I have completed the form for his physical capacity evaluation which should accompany this letter."
 {¶ 10} 3. Dr. Robie completed a physical capacities evaluation wherein he indicated that relator could frequently lift up to five pounds and occasionally lift up to 20 pounds; could frequently carry up to ten pounds and occasionally lift up to 20 pounds; could use his hands for repetitive actions such as simple grasping but was precluded from using his hands for repetitive action such as pushing and pulling of arm controls as well as fine manipulation; and could occasionally bend but was precluded from squatting, crawling, climbing and reaching. Dr. Robie noted that relator's overhead arm function was markedly limited on the left.
 {¶ 11} Relator was examined by Dr. Gerald S. Steiman who issued a report dated April 4, 2001. After giving a lengthy historical recitation, Dr. Steiman noted his objective findings. Dr. Steiman opined that relator was able to perform sustained remunerative employment in the sedentary to light duty range.
 {¶ 12} Dr. Steiman issued a second report, dated May 1, 2001, after he received additional medical records necessitating up-to-date chronological review. Those records included two MRIs of relator's cervical spine. In the discussion/opinion portion of his report, Dr. Steiman noted as follows:
 {¶ 13} "* * * Upon review of Mr. Stonerock's additional medical records, it is noted that he has had two MRI's of the cervical spine, the first in April, 1994 and the second in August, 1996. The MRI's of the cervical spine have both shown evidence of multi-level degenerative joint and disc disease with evidence of multi-level bilateral foraminal encroachment.
 {¶ 14} "Mr. Stonerock's cervical problems, noted throughout his medical history, are not related to the upper extremity diagnoses found within Claim 91-437766 or Claim 96-518193. Mr. Stonerock's chronic neck discomfort is a manifestation of the cervical osteoarthritis evidenced by his clinical complaints and, more importantly, his MRI studies. Mr. Stonerock's history, up-to-date medical record review, physical examination of March 30, 2001, plus the objective findings noted within his diagnostic studies do not indicate that he has evidence of a permanent and total impairment as a result of the cervical problems or the allowed conditions within Claims 91-437766 and 96-518193."
 {¶ 15} An independent specialist report was prepared by Dr. William Reynolds and dated May 9, 2001. Dr. Reynolds opined that relator had reached maximum medical improvement and assessed a 27 percent whole person impairment for all of relator's allowed conditions. Dr. Reynolds concluded that relator would be capable of performing work activity which was sedentary in nature.
 {¶ 16} There are three vocational reports on file. Jennifer J. Stoeckel, Ph.D., issued a report dated June 19, 2001, wherein she found that, based upon the reports of Drs. Robie and Steiman, relator was not employable. Based upon the report of Dr. Reynolds, Dr. Stoeckel listed several jobs which relator could perform. She noted that relator's age of 61 years may negatively effect his reemployment, that his ninth grade education is sufficient for most entry level positions and that his work history at a variety of skilled positions suggest no need to instill employable skills such as the ability to work well with, influence and supervise others. She noted further that it was reasonable to assume that relator could benefit from rehabilitation if necessary. The record also includes the July 12, 2001 employability assessment report of Ted S. Macey, M.S., CRC, who found that, based upon the report of Dr. Robie, relator was not employable. However, based upon the reports of Drs. Steiman and Reynolds, Mr. Macy listed several jobs which relator would be able to perform. Mr. Macey noted that relator had certain transferable skills regarding supervision, record keeping, service agreements, and customer and staff relations. The record also includes the June 25, 2001 report of Carl W. Hartung, MRC, CRC, who opined that relator could not return to any of his previous work due to the lack of required physical capacity and concluded that, although relator may have the physical demand potential of engaging in work activities at the sedentary/light level generally, the additional physical impairments and subsequent limitations to the upper extremities, as stated by Dr. Steiman, combined with poor adaptability, adjustment, pace, and persistence and lack of transferable skills would eliminate relator's capability of maintaining competitive work demands.
 {¶ 17} Relator's application for PTD compensation was heard before a staff hearing officer ("SHO") on August 8, 2001, and resulted in an order denying the application. The SHO relied upon the medical reports of Drs. Reynolds and Steiman and concluded that relator retained the capacity to engage in sedentary employment. The SHO conducted his own analysis of the nonmedical disability factors and stated as follows:
 {¶ 18} "The claimant is currently 61 years of age. He has a 9th grade education. He left school early to help out with the family. The claimant indicates that he can read, write and perform basic math.
 {¶ 19} "The claimant first worked as a farm laborer. He then worked very briefly making filters for swimming pools. The claimant testified that this was not difficult work. He stated that it only took him 2 hours to learn the job. The claimant in this job showed some of his natural mechanical and engineering abilities.
 {¶ 20} "The claimant operated a radio and drove a jeep for a few years in the Army.
 {¶ 21} "The claimant's primary occupation has been as a door installer, for approximately a 30 year period. The claimant worked installing huge metal doors in commercial establishments. The claimant categorized himself at hearing, `as the best doorman in the world.'
 {¶ 22} "The claimant worked in all aspects of the door installation business. He installed the doors. He instituted a quality assurance program in the manufacturing of the doors. He worked with the engineer in the company to improve the design of the doors. He worked directly with top management in the company. The claimant became the top trouble shooter in the company. The claimant was flown all over the country to correct problems. The claimant had the authority to handle all these problems and negotiate corrections. If the problem was a mechanical defect in a part, he had complete power to remedy the problem.
 {¶ 23} "The claimant did testify that he was a `hands on kind of guy.' Certainly because of his injuries, the claimant could not presently do the direct work with the installation of the doors. However, the claimant with his proven expertise in this field, still maintains marketable skills, either with his old company or a competitor door company.
 {¶ 24} "The claimant has the skills to sell doors. He has the knowledge to advise others on problems with the doors. He could still work in quality assurance.
 {¶ 25} "The claimant testified he still drives. He also testified to problems gripping with his hands. Under many circumstances, an individual with a limited education and work in a physically demanding field would be deemed unable to adjust to sedentary work. However, this claimant is an exceptionally bright and capable individual. Very few people ever rise to the level of the `very best' in any area. This claimant has skills that still would be valuable in his previous area of employment.
 {¶ 26} "* * *
 {¶ 27} "Based on the above independent analysis, the vocational report of Ted Macey, dated 07/12/2001, finding the claimant capable of work within the restrictions outlined by Drs. Reynolds and Steiman, was also found persuasive.
 {¶ 28} "Since based on the reports of Reynolds and Steiman, the claimant retains the capacity to engage in sedentary employment, and the claimant has the ability to engage in sedentary employment, the Application for Permanent Total Disability is denied."
 {¶ 29} Relator's request for reconsideration was denied by order of the commission mailed October 19, 2001.
 {¶ 30} Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 31} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry Co. (1987),29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 32} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994),69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments but, also, the claimant's age, education, work record and other relevant nonmedical factors. State ex rel. Stephenson v. Indus. Comm. (1987),31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v. Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203.
 {¶ 33} Relator first contends that his treating physician, Dr. Robie, was the only doctor who provided an explanation of relator's physical limitations. It appears that relator is arguing that the commission should have relied upon Dr. Robie's report since he was the only physician who provided actual restrictions. However, in State ex rel. Bell v. Indus. Comm. (1995), 72 Ohio St.3d 575, the court rejected the assertion that a treating physician's report is entitled to enhanced weight.
 {¶ 34} Sedentary work is defined in Ohio Adm. Code 4121-3-34(B)(2)(a) as follows:
 {¶ 35} " `Sedentary work' means exerting up to ten pounds of force occasionally (occasionally: activity or condition exists up to one-third of the time) and/or a negligible amount of force frequently (frequently: activity or condition exists from one-third to two-thirds of the time) to lift, carry, push, pull, or otherwise move objects. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met."
 {¶ 36} Relator contends that an overall view of the medical evidence would indicated that his upper extremity impairment limits him to less than full use of his arms. As such, relator contends that he would not be able to perform repetitive tasks with his upper extremities as sedentary work is defined. This magistrate disagrees.
 {¶ 37} First of all, Dr. Robie indicated that relator could frequently lift up to five pounds and could occasionally lift up to 20 pounds as well as frequently carry up to ten pounds and occasionally carry up to 20 pounds. This falls within the definition of sedentary work. Although Dr. Robie did indicated that relator could not use his hands for repetitive actions such as pushing and pulling of arm controls and fine manipulation, the commission did not rely upon the report of Dr. Robie. Instead, the commission relied upon the reports of Drs. Steiman and Reynolds who concluded that relator could perform sedentary work activity. Further, inasmuch as the Ohio Supreme Court has held that part-time work constitutes sustained remunerative employment, see State ex rel. Toth v. Indus. Comm. (1997), 80 Ohio St.3d 360, the evidence indicates that, if relator could not perform certain activities for a full eight hour day, he could do so on a part-time basis. As such, this argument of relator is not well-taken.
 {¶ 38} Relator's main focus is on the commission's analysis of the nonmedical disability factors. Relator asserts that the commission did not discuss the impact of his age on his ability to perform other sustained remunerative employment and that there is no direct evidence for the commission to find that relator is "exceptionally bright" or that he maintains marketable skills because of his proven expertise in his prior employment. This magistrate disagrees.
 {¶ 39} As indicated previously, the commission based much of its discussion on the nonmedical disability factors on relator's testimony at the hearing. The commission is entitled to rely on the testimony relator gave at the hearing concerning his abilities and his experience under a variety of different conditions. Further, the commission specifically noted the vocational report of Ted Macey who did discuss relator's age and found that it would not be a factor which would effect relator's functional capabilities. The commission found that relator had instituted a quality assurance program, worked directly with management, became the top troubleshooter in the company, and had authority to handle mechanical problems and negotiate corrections. The commission was entitled to find these to be positive factors in terms of relator's ability to become reemployed. This magistrate finds that the commission's analysis complies with the requirements of law and that relator has not demonstrated that the commission abused its discretion.
 {¶ 40} Based on the foregoing, it is this magistrate's decision that relator has not demonstrated that the commission abused its discretion in denying his application for PTD compensation and this court should deny relator's request for a writ of mandamus.